IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DEREK RYAN CAUDILL,** )<br>     Plaintiff,           )<br>                                 )   Civil Action No. 7:21cv00606<br>v.                             )<br>                                 )   **MEMORANDUM OPINION**<br>**SOUTHWEST VIRGINIA**   )<br>**REGIONAL JAIL AUTHORITY,** )   By: Pamela Meade Sargent<br>et al.,                       )   United States Magistrate Judge<br>     Defendants.       ) | |

Plaintiff, Derek Ryan Caudill, ("Caudill"), an inmate previously incarcerated at the Southwest Virginia Regional Jail Authority, ("Regional Jail"), has filed this suit pursuant to 42 U.S.C. § 1983 against the defendants, the Regional Jail, Officer Musick, ("Musick"), Officer Kiser, ("Kiser"), Sergeant Deskins, ("Deskins"), and Corporal Ball, ("Ball"). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). This case is before the court on the defendants' motion to dismiss. (Docket Item No. 20) ("Motion"). For the reasons stated below, I will grant the Motion and dismiss Caudill's federal claims pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failing to state a claim.

*I.*

Caudill's Amended Complaint, (Docket Item No. 7), stated that he is pursuing his claims under 42 U.S.C. § 1983 and state tort law based on negligence. In his Amended Complaint, Caudill alleged that he was confined at the Regional Jail's Abingdon facility from April 13, 2020, to May 17, 2021. Caudill alleged that, on

February 6, 2021, he was housed in Unit 5-A at the Regional Jail and was involved in a physical altercation with another inmate, J.B. Goodman, ("Goodman"), at about 7:30 p.m. in the pill call line. Caudill stated that other inmates broke up the fight. Caudill alleged that defendant Musick was working in the Unit, and defendant Kiser was working in the Control Booth when the fight broke out. According to Caudill, Musick knew of the first altercation, but took no action to stop it. Instead, Caudill alleged that Musick said only, "It's a Super Bowl weekend, stop trying to get pod locked down." Caudill alleged that Musick also said, "Fight needed to be taken into cells instead of pod, so no one notices and nothing done." Caudill alleged that Kiser was in the control room "and either ignore situation at hand, or was doing something else." Caudill also alleged, at one point, that Kiser reviewed the video footage of the altercation. At another point, Caudill alleged that Kiser erred by failing to view the video footage of the first altercation.

A few minutes later, at approximately 8 p.m., Caudill alleged, the Unit's cell doors were opened for a "cellbreak," and Goodman entered his cell and assaulted him. Caudill alleged that he and Goodman fought in his cell for only three minutes, during which time his right arm was broken. Caudill alleged that neither Musick, nor Kiser, took any action to stop the second altercation. During the next cell break, Caudill alleged that he told unnamed officers that his arm was broken, to which Musick responded, "tell the truth," "don't lie." He alleged Musick said, "Why cause trouble on Super-Bowl Weekend?" Caudill alleged that he contacted family members, who contacted the Regional Jail to report Caudill's injuries.

Caudill alleged that, after his family contacted the Regional Jail, he was cuffed by unnamed officers and taken to the Medical Department. Caudill stated that he was in excruciating pain because his injured arm was cuffed, although he asked that

his injured arm not be cuffed. When he arrived in the Medical Department, Caudill alleged, unnamed nurses told the officers that they should not have cuffed Caudill's injured arm, and the cuffs were removed. Caudill alleged that he was placed in a cell the Medical Department until about 8:30 p.m., when he was removed from the cell and x-rays taken of his head and right arm. Caudill alleged that, despite having facial injuries, including bruising, blood and swelling, no photographs were taken of his injuries. Caudill said the x-rays of his right arm showed that his ulna was fractured with "fragments and displacement." Despite this finding, Caudill alleged, he was taken back to the Medical Department and held there until February 9, 2021.

Caudill alleged that Musick and Kiser, both, knew of the first altercation and "avoided the situation entirely." When Caudill was served with an institutional infraction for fighting, he alleged, Kiser told him, "man you got your ass kicked." Caudill alleged that Kiser violated Regional Jail policy by cuffing his injured arm. Caudill alleges that Kiser should have reviewed the video to see the first altercation after his family called to report his injury. Caudill alleged that Musick's comments showed that he knew of the "fights, yet did nothing!" Caudill alleged that Musick said that "fight needed to be taken into cells instead of pod."

Caudill also alleged that Musick has repeatedly harassed him, making comments such as, "I will come into your cell and beat your f--king ass." Caudill said that he sent an email to his mother regarding Musick's threats and asked her to call the facility to report it. He said that, after he sent the email, Musick came and took the tablet he had been using. Then, 30 minutes later, defendant Sergeant Deskins and Corporal Ball came to see him and asked, "What's going on?" Caudill alleged that, as he tried to explain what had happened, Deskins stopped him and called him a "f--king liar." He said Deskins told him "stop having people call up

here and causing problems, go back to [your] bunk, sit down, and shut up." Caudill alleged that Ball told him, "Call you mommy and tell her you got plenty of toilet paper to dry your tears with."

Caudill further alleged:

1. Officer Musick failed to conduct his duties as assigned and required by facility in a professional manner and follow institutional procedures as required during first incident, yet ignored and looked other way…. He further fail[ed] to perform duties during second incident as stated, he further goes on to make threatening and derogatory remarks toward plaintiff.
2. Officer Kiser failed to perform duties in his official capacity as control room officer not monitoring pod activity, and calling for backup during first and second altercation, he fails to follow procedures in reviewing video footage to determine first altercation and additionally makes derogatory [remarks] toward plaintiff.
3. Sergeant Deskins makes threatening and derogatory remarks toward plaintiff … and threatens plaintiff.
4. Corporal Ball made additional derogatory remarks toward plaintiff and threatening comments.
5. Facility staff failed to follow procedural protocols as plaintiff was handcuffed on broken arm, which could have caused more injury to area already broken, and medical staff verified it should [have] not been done.
6. … [T]he negligence of Officer[] Musick[] and Officer Kiser has caused plaintiff to [receive] permanent injury to his right arm which cannot be fully recovered, which could have been avoided if officers would have operated in capacity of job assigned instead of being concerned about "Super Bowl weekend."

Caudill alleged that, after he was transferred to the Virginia Department of Corrections custody at Pocahontas Correctional Center on May 17, 2021, he asked to be evaluated, and he was told that his arm was still broken, he was given a brace

-4-

to wear, and a orthopedic consultation was requested. Caudill alleged that he continues to wear a support brace and takes daily medication for pain and discomfort due to the injury suffered in the second altercation, "which could [have] been avoided if facility administration had performed duties as required."

Caudill seeks monetary damages for permanent personal injury against the defendants in their "individual and professional capacity as they were operating under 'color of state law' and employees of [Regional Jail]…." Caudill alleged that the defendants "failed to operate and abide by procedural protocols which [were] clearly established while performing their duties…." Caudill alleged: "If the defendants had not failed to neglect the first altercation[,] the permanent injury would not have occurred." Caudill further alleged: "The unprofessional conduct of 2-superior [sic] officers clearly shows unprofessionalism. Sergeant Deskins and Corporal Ball failed to correct officers unprofessional conduct and behavior. … Plaintiff asserts the defendants['] gross negligence caused him permanent injuries."

II.

In the Motion, the defendants argue that Caudill's Amended Complaint should be dismissed under Federal Rules of Civil Procedure Rule 12(b)(6) for failing to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion to dismiss, all well-pleaded factual allegations contained in a complaint are to be taken as true and viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The complaint must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action," and it must allege facts specific enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Dismissal also may be appropriate where the complaint contains a detailed description of underlying facts, which fail to state a viable claim. *See Estelle v. Gamble*, 429 U.S. 97, 106-08 (1976).

Furthermore, the court is required to liberally construe complaints filed by plaintiffs proceeding pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *See Erickson,* 551 U.S. at 94; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This requirement of liberal construction does not mean, however, that the court should ignore a clear failure to plead facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

In this case, it appears that Caudill is attempting to claim that his rights under the Eighth Amendment to be free from cruel and unusual punishment have been violated under 42 U.S.C. § 1983. In particular, Caudill has alleged 1) defendants Musick and Kiser failed to protect him from the assault by Goodman; 2) defendant Kiser improperly handcuffed his broken arm; 3) the defendants Musick, Kiser, Deskins and Ball harassed and threatened him; and 4) he was provided inadequate medical care. It also appears that Caudill is attempting to raise some unspecified state law claim based on "negligence."

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). The Eighth Amendment to the

U.S. Constitution protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment right to be free from cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates and protect them "from violence at the hand of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted); *Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003). Not every instance of inmate-on-inmate violence "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To adequately state a failure to protect claim under the Eighth Amendment, a prisoner must allege an objectively "sufficiently serious" deprivation and a "sufficiently culpable state of mind" on behalf of the defendant prison officer. *Odum*, 349 F.3d at 770 (quoting *Farmer*, 511 U.S. at 834). To qualify as objectively sufficiently serious, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted). To demonstrate a sufficiently culpable state of mind, a prisoner must allege deliberate indifference by the prison official to the prisoner's health or safety. *See Farmer*, 511 U.S. at 834. To adequately allege deliberate indifference, a prisoner must allege that a prison official actually knew of and disregarded a substantial risk of serious harm. *See Odum*, 349 F.3d at 770 (citing *Farmer*, 511 U.S. at 837).

Here, the defendants argue that Caudill has failed to allege facts showing that any of the defendants had knowledge of any risk of harm to him. Based on my review

-7-

of the Amended Complaint, I agree. While Caudill alleges that Musick knew of the altercation with Goodman at pill call, Caudill did not allege that Goodman had threatened any further harm to him after the first altercation or that he had reported to anyone that Goodman posed any further threat of harm to him before the attack in his cell approximately 30 minutes later. In fact, Caudill specifically alleged that Kiser had no knowledge of the second fight until after his family called to report his injuries. Caudill did allege that Musick's comments show that he had knowledge of the "fights," but he does not allege that Musick, or any of the other defendants, had knowledge of the three-minute-long assault in his cell in time to intervene. Based on this, I will grant the Motion and find that Caudill's Amended Complaint fails to state a claim against defendants Musick and Kiser for failure to protect.

I also find that Caudill's Amended Complaint fails to state a claim against any of the defendants for violation of his Eighth Amendment rights based on allegations that the defendants verbally threatened and harassed him. "Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation." *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 691 (E.D. Va. 2010); *see also Morva v. Johnson*, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to an Eighth Amendment violation).

I also find that Caudill's Amended Complaint fails to state a claim against any of the defendants for violation of his Eighth Amendment rights based on a denial of medical care. To state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. *See Rush v. Vandevander*, 2008 WL 495651,

at *1 (W.D. Va. Feb. 21, 2008) (citing *Estelle*, 429 U.S. at 104). With regard to a prisoner's medical treatment, a prison official is deliberately indifferent if he knows of, but disregards, an inmate's serious medical need. *See Farmer*, 511 U.S. at 844-45. Liability under this standard requires two showings. First, the evidence must show that the prison official subjectively recognized a serious medical need. It is not sufficient that the official should have recognized it; the official must actually have known of it. *See Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978); *Rush*, 2008 WL 495651, at *1. Second, the evidence must show that the prison official subjectively recognized that his actions were "inappropriate in light of that risk." *Rich*, 129 F.3d at 340 n.2. It is insufficient that the official should have recognized that his actions were insufficient. *See Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001). Therefore, to adequately plead a claim for deliberate indifference, a plaintiff must plead facts that show the defendants had actual knowledge of and disregard for an objectively serious medical need. *See Rush*, 2008 WL 495651, at *1 (citing *Farmer*, 511 U.S. 825); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).

Based on Caudill's allegations, he was injured when Goodman assaulted him in his cell during the 8 p.m. cell break. According to Caudill, he did not report his injury to prison officials until the next cell break. Nonetheless, Caudill also alleged that he was escorted to the Medical Department and placed in a medical cell and, then, removed from that medical cell at 8:30 p.m. so that x-rays could be performed.

Thus, accepting Caudill's allegations as true, there was no denial of medical care, in that Caudill was in the Medical Department undergoing diagnostic testing within less than 30 minutes of receiving his injury. *See Wynn v. Mundo*, 367 F. Supp. 2d 832, 838 (M.D. N.C. 2005) (delay in receipt of medical care only constitutes deliberate indifference where plaintiff can show that the delay caused substantial harm). Insofar as Caudill complains about the adequacy of his medical treatment once placed in the Medical Department, Caudill has not sued any personnel who were involved in his medical care. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (to be liable under § 1983, official must have acted personally in the deprivation of plaintiff's rights).

I also find that Caudill's allegation that Kiser briefly handcuffed his broken arm fails to state an actionable Eighth Amendment deliberate indifference claim. At one point in his Amended Complaint, Caudill alleged that he was cuffed by unnamed officers and taken to the Medical Department. Caudill stated that he was in excruciating pain because his injured arm was cuffed, although he asked that his injured arm not be cuffed. When he arrived in the Medical Department, Caudill alleged, unnamed nurses told the officers that they should not have cuffed Caudill's injured arm, and the cuffs were removed. At another point in his Amended Complaint, Caudill alleged that Kiser violated Regional Jail policy by cuffing his injured arm. As stated above, to state a claim for deliberate indifference, a prisoner must allege that a prison official actually knew of and disregarded a substantial risk of serious harm. Even if Kiser did briefly cuff Caudill's broken arm, Caudill admits that the cuffs were removed as soon as the nursing staff pointed out that his arm should not be in cuffs.

I also find that Caudill's Amended Complaint fails to state a claim under § 1983 against the Regional Jail. A local governing body, such as the Regional Jail Authority, can be sued directly under § 1983 for monetary, declaratory or injunctive relief, but only if the entity's official policy, regulation or decisions causes the unconstitutional deprivation. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). Caudill's Amended Complaint does not allege that any of the Regional Jail's policies caused the alleged constitutional violations.

I note that, insofar as Caudill's Amended Complaint attempts to state a claim under Virginia state law for "negligence" or "gross negligence," it also appears facially deficient. I do not address these deficiencies, however, because, having found that Caudill's Amended Complaint fails to state a claim under § 1983, I will decline to exercise jurisdiction over these state law claims and dismiss them without prejudice so that Caudill may, if he chooses, elect to pursue these claims in Virginia state court. *See* 28 U.S.C. § 1367(c)(3); *UMWA v. Gibbs*, 383 U.S. 715, 726-27 (1966) (if federal claims are dismissed before trial, pendent state law claims should be dismissed without prejudice and left for decision by state court).

An appropriate order will be entered.

**ENTERED**: January 31, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE